Good morning, your honors. May it please the court. My name is Andrew Johnson. I'm here to represent the petitioner in this matter, and I would request defense for rebuttal at the end of the arguments. This is a case involving a petitioner from China who alleges persecution based on political opinion, that is, his opposition to the one-child policy. And the questions that are raised in the appeal here are based on refining the credibility of the petition, several aspects of the petition, justifying the demands. So I'm going to address those issues as they were raised in the briefs. The immigration judge found that the petitioner's lack of a mentioning of a case he had joined in the hospital after he was arrested and released was sufficient to find that he was not credible, since he mentioned it in his testimony at the individual hearing. The fact of the matter is that he did in addition to his testimony in the individual hearings that had a medical record, which indicated he had a CT scan, and in addition he was able to describe the procedure that was performed on him during the testimony. The reason he states, and I think that he used the interview, whether his reason for not stating he had a CT scan in the asylum interview, in the immigration service, is that he didn't think that he needed to mention it since Duncan was the founder or indicated through his CT scan. The judge found that that was not a sufficient excuse for not mentioning it at his original individual hearing. I would submit that because there is other evidence in the file, in the record, that indicated that while one may find his reasoning for not mentioning a CT scan to someone weak, and it's plausible, it's just a lack of justification. But he did submit the medical record, he did submit an additional evidence testimony in the hearing. At what point did he submit the medical record? He submitted it at the asylum interview, but he did indicate in his direct testimony that he didn't look at it, didn't read it, whether that would have made a difference, we don't know. But it was in the record from the beginning. Well, it wasn't really because, as I understand the logic of the immigration judge, is that it wasn't just that he didn't mention it in the asylum interview, but that he was asked if he had any tests and he said no. Exactly. So then he tested in a contradictory fashion later. Do you think that this justification would allow us to get a relief that there are specific credibility findings by the immigration judge that are supported by the record? I'm sorry, can you repeat that again? Yeah, is there case law in the circuit that the immigration judge made specific credibility findings that are supported in the record that we can reverse while we're studying the BIA? I'm not aware of that per se. The question is whether the judge's credibility reasons are correct. And that's why I'm saying with current institutions that that was not a reasonable given the other evidence he filed and that petitioner's response to why he didn't mention statistics. Were there more evidence that the immigration judge made that the test for his name was not being used? You know, they looked at falsehoods of human rights, falsehoods of human rights. He found specifically that he had lied on a couple of things and basically that he disbelieved the entire testimony. Is that reasonable on appeal? Yes. And I don't think he lied and I don't think that's what the judge found. Well, I mean, I support the judge's own work, but he found there was nothing credible in these specific findings. Correct. There was another example of the exchange between Stolfi and his parents as he was being taken to the hospital and he was released. And there was some confusion. I think the judge calls the evasive. There was a confusion. Is an evasive an implausible? That too, but again, that's his, the fact that the petitioner testified that he wanted to, that he, that he hadn't been beaten in his face. Certainly, he didn't even want to get into the hospital. All of that was his main concern. His parents didn't tell him where his wife was and it wasn't until he actually got home approximately an hour, hour and a half later that Stolfi and his wife was in the hospital and he went back to the hospital. He testified, it seems like for what I see in here, that he testified he did not know that his wife was in the hospital recovering from the forced abortion until he arrived home from the same hospital. And then he was questioned whether he had not asked about his wife's whereabouts, which seems like a reasonable question, as soon as he was released from the police station. I think this is what the IJ focused on in it because Mr. G answered that he was in a hurry at the time, not that he was in pain based on what you just said. After that, because you stated that he had asked about his wife right after his release from the police station, but that his parents lied to him and did not tell him the truth about his wife's whereabouts until he came back home from the hospital. The IJ did not write this testimony possible and found it evasive. And I wanted to ask you, and you've been talking about this a little, how important do you think we could be held to find to the contrary? If you look at the actual part of the testimony where the abortions questions were being asked of him, about what did you do when you got out of the hospital, when you got out of jail, did you ask about your wife? It's a very short section and I think it was a matter of the petitioners. It's being asked for the first time in eight years of what happened. But I think the consistent part of it is you got out of jail, your parents picked him up, he went to the hospital, went home, returned to the hospital, stayed with his wife for five days, as to why he was harassed, why he was harassed. I think that one could argue that it's a sincere petition trying to remember what exactly did he ask, you know, beginning, did he ask? I feel like, I think that would be falsely looking at that issue. Thank you. Thank you to the judges. John, is there some time for voting? John, good to see you again. Good to see you. I'm John, I'm with the court. I'm still Lance Dolly and I still represent the United States Attorney General Correspondent. Substantial evidence supports the agency's adverse credibility finding in this case. Mr. G's testimony directly conflicts with his asylum interview regarding whether any tests were done. This is particularly significant as when he testified before the immigration judge, he had a fairly vivid recollection. The immigration judge asked him how he remembered, and he said, because I was there, not because I reviewed my record or whatever. He had a recollection of it. And it's definitely also conflicts with what he told the doctor as the source of the injury, whether it was an accident or whether he got into an argument. And as this court has also addressed that, Mr. G's testimony was evasive in the corrective site for what you're looking at, it's administrative record 101 through 03, and it's in our brief net, pages 8 through 9. But the IG did not make a demeanor finding, is that correct? A specific demeanor finding? He made an impossibility slash evasive finding, and whether he used the exact word demeanor. That's why I'm asking, is it, you know, usually once the IG makes a specific demeanor finding and uses the word demeanor, then that's something to which we owe some deference. Evasiveness, that's the paranoid phenomena, same category, so that's why I'm asking. Well, in both cases, the court requires that the immigration judge set forth where he was evasive or what doesn't, where the demeanor was. The immigration judge just can't say, I found him evasive. Right. What you see in demeanor finding is that, by personal observation, I gather that the evasiveness finding is based on his action testimony, not any of his physical reaction at the hearing, is that right? As far as I read the immigration judge's decision, that is correct. And since those are the two main areas that the board focused on, and the board explicitly did not read the other pieces of the immigration judge's decision, that is what is left for the court to determine. And as the record does not compel reversal on these grounds, the court should deny the petition for review. Any further questions? Thank you. I'll just respond to the two issues briefly that we didn't get to during previous time. With regard to the demeanor, I don't believe the judge did make any demeanor finding, usually in that type of setting, it would be a much more detailed analysis of exactly what the demeanor was that was compelling to the judge with regard to how he was injured. That is in the medical record. The vegetarian testimony, he didn't tell anybody that he was arrested and beat by the police, including he gave a statement just when he said he didn't need a doctor for an ear or something. The BIA said this, and I'm going to ask you to respond. The medical documents are inconsistent with the respondent's testimony. The respondent testified he could not tell medical staff that the police beat him, so he told them he was injured accidentally at a construction site. However, the documents state that the respondent came to the hospital for treatment because he was injured during an argument with someone a half an hour ago. Unfortunately, the petition was never asked directly about that conflict. Frankly, I don't think we would be able to respond to it since nobody knows who created this medical record in the hospital who wrote the notes. We just don't know whether the notes were correct with regard to what was said during the injury. It's hard to correct these. You have to be careful to make any correct moves. If I told the record that they gave the record, it was never questioned or examined with regard to the accuracy. Your record seems to be in good condition. Very good. Thank you, counsel. The case is reviewed. This is a decision for a decision.
judges: Thomas, Murguia, Baylson